## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ALBERT SANDHAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-306-JED-FHM |
| | ) | |
| CSAA GENERAL INSURANCE | ) | |
| COMPANY, CSAA INSURANCE | ) | |
| EXCHANGE, CSAA FIRE & CASUALTY | ) | |
| INSURANCE COMPANY, and | ) | |
| AUTOMOBILE CLUB OF OKLAHOMA, | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

This insurance dispute comes before the Court on Plaintiff Albert Sandhar's Motion to Remand (Doc. 21).

## I.    Background

Mr. Sandhar bought his homeowners insurance policy through the Automobile Club of Oklahoma, better known as "AAA Oklahoma." After a storm damaged his home, he tried to avail himself of that policy only to have the insurer refuse to cover the full cost of the necessary repairs. He later sued in Tulsa County District Court, alleging breach of contract and bad faith against the Automobile Club and three others: CSAA Insurance Exchange, CSAA Fire & Casualty Insurance Company, and CSAA General Insurance Company (the "CSAA Defendants"). (Doc. 2-2). It is not entirely clear from Mr. Sandhar's petition which entity was his actual insurer or what role the other defendants had in issuing his policy or processing his claim, as he alleges all of the wrongful conduct against the "Defendants" collectively. According to Mr. Sandhar, all four defendants are part of a single insurance conglomerate and therefore share responsibility for the commitments made to him in his insurance policy.

Shortly after Mr. Sandhar filed his petition, the Exchange and CSAA Fire & Casualty removed the matter to federal court, citing the Court's jurisdiction under 28 U.S.C. § 1332. Mr. Sandhar now moves to remand, arguing that the parties lack the requisite diversity of citizenship.

## II.    Legal Standard

When a plaintiff brings a civil action in state court, but a federal district court has proper jurisdiction to hear it, a defendant may remove the case to federal court. 28 U.S.C. § 1441(a). The relevant jurisdictional grant in this case, 28 U.S.C. § 1332(a), provides that district courts shall have original jurisdiction over civil actions between citizens of different states. Jurisdiction is proper, however, only where there is complete diversity of citizenship; no plaintiff can be a citizen of the same state as any of the defendants. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Additionally, where federal jurisdiction is based in diversity, the so-called forum-defendant rule bars removal when any of the "properly joined" defendants is a citizen of the state where the action was originally brought. 28 U.S.C. § 1441(b)(2).

A defendant may nevertheless remove a case to federal court based on diversity if the plaintiff fraudulently joined the nondiverse defendant in order to defeat federal jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Am. Nat'l Bank & Trust Co. of Sapulpa v. Bic Corp.*, 931 F.2d 1411, 1412–13 (10th Cir. 1991). To establish fraudulent joinder, "the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)). When a party alleges the second kind of fraudulent joinder, the party must prove the plaintiff "ha[s] no possibility of recovery" against the

nondiverse defendant. *Montano v. Allstate Indemnity*, No. 99-2225, 2000 U.S. App. LEXIS 6852, at *12 (10th Cir. Apr. 14, 2000).

> This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced. "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."

*Id.* at *5–6 (internal citation omitted) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–53 (3d Cir. 1992).

If necessary, a district court may go beyond the pleadings to determine whether a party's joinder is fraudulent:

> In many cases, removability can be determined by the original pleadings and normally the statement of a cause of action against the resident defendant will suffice to prevent removal. But upon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.

*Smoot v. Chicago, R.I. & P. R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967) (internal citations omitted).

"The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988.

## II.   Discussion

Mr. Sandhar claims that the Exchange and the Automobile Club are, like him, citizens of Oklahoma. As a result, he argues, their presence in the case breaks complete diversity and precludes the Court's jurisdiction to hear this case. The CSAA Defendants, meanwhile, argue the Exchange, organized under California insurance law, is a citizen of California, not Oklahoma. Even if it is considered to be an Oklahoma citizen, they say, the Court should disregard the Exchange for the purposes of its diversity analysis because Mr. Sandhar's claims against the

Exchange spurious. The Automobile Club's citizenship, which they concede to be Oklahoma for the purposes of this litigation, should similarly be ignored, they argue.

### A.  CSAA Insurance Exchange

The Exchange's organizational structure complicates the task of determining its citizenship. CSAA Insurance Exchange is a reciprocal insurer, also called an "insurance exchange" or "interinsurance exchange." Loosely defined, an insurance exchange is "an aggregation of persons, called subscribers, who, through an attorney-in-fact, cooperate to furnish themselves and each other insurance against a designated risk." Steven Plitt et al., *Couch on Insurance* § 39:48 (3d ed.); *see also* Okla. Stat. tit 36 § 2902 (providing Oklahoma's statutory definition); *Lee v. Interinsurance Exch.*, 50 Cal. App. 4th 694, 702–06 (1996) (describing the nature and organization of reciprocal insurers established under California law). The prevailing rule considers reciprocals to be unincorporated associations for the purposes of diversity jurisdiction, holding them to share the citizenship of each of their individual subscribers. *See True v. Robles*, 571 F.3d 412, 422 n.2 (5th Cir. 2009); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *Shultz Corp. v. Indus. Indem. Co.*, 727 F. Supp. 1359, 1362 (D. Or. 1989).

The CSAA Defendants insist that the Exchange is not subject to this rule, asserting instead that it is a citizen of California alone. According to the CSAA Defendants, the Exchange is different from other reciprocals that take on the citizenship of their subscribers. "The CSAA Insurance Exchange is created and functions differently, operates differently, and is by no means considered a citizen of any state other than California." (Doc. 2 at 11). The Court can only guess what exactly these differences might be, or why they would render the normal rule inapplicable. The defendants never explain. Instead, they turn to the statute governing the Court's diversity jurisdiction. (*See* Doc. 2 at 4). The relevant section provides that "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and . . . has its principal place

4

of business." 28 U.S.C. § 1332(c). The CSAA Defendants assert that the Exchange is a "not-for-profit company, formed under the laws of the State of California," whose "nerve center or principal place of business" is also in California. Consequently, they argue, the Exchange must be a citizen of California and California only.

This argument is untenable. Section 1332, by its plain language, applies to corporations. As the CSAA Defendants are aware, and have acknowledged elsewhere, the Exchange is not a corporation. *See McDonald v. CSAA Insurance Exchange*, No. CIV-16-336-R, 2017 WL 887108, *2 (W.D. Okla. Mar. 6, 2017). The location of the Exchange's formation and principal place of business are, therefore, irrelevant. *See id.*

As the CSAA Defendants offer no compelling reason do otherwise, the Court applies the prevailing rule that a reciprocal insurer shares the citizenship of its individual subscribers. Hence, the question for the Court is whether any of the Exchange's subscribers are citizens of Oklahoma. The evidence submitted by the parties on this point leaves much to be desired.

The CSAA Defendants rely primarily on an affidavit executed by the Exchange's associate general counsel, Katherine Evans. (*See* Doc. 26-2). According her, CSAA Insurance Exchange "is not licensed to transact insurance business in Oklahoma, which includes issuing policies to Oklahoma citizens," "does not issue insurance policies in the state of Oklahoma," and "does not have subscribers or members that are citizens of the State of Oklahoma." (*Id.* ¶¶ 2–3). A licensure search confirms that the Exchange is not licensed to write insurance in Oklahoma. (Doc. 26-9).

In some ways, this is thin gruel. Nowhere in the affidavit does Ms. Evans describe the Exchange's subscribership base or establish any foundation for her assertion that none of the subscribers are citizens of Oklahoma. The fact that the Exchange does not write business in Oklahoma certainly provides *some* support, but it is not dispositive proof. According to the

5

Exchange's 2017 financial statement, which is on file with the California Department of Insurance, the Exchange wrote $3.54 billion in premiums that year, mostly through auto and homeowners policies issued in California. *See* CSAA Insurance Exchange and Subsidiaries, *Combined Financial Statements, 2017 and 2016*, at 8, 42.[1] Given the consumer-oriented nature of the policies in question, it is likely that the overwhelming majority of the subscribers are domiciled (and therefore citizens) of California. Nevertheless, it is possible that some of the policy holders merely maintain a residence in California and are actually domiciled in another state, such as Oklahoma. Ruling out this possibility would require the Exchange to ascertain the legal domicile of each of the Exchange's many thousands of subscribers. As nothing in Ms. Evans's statement suggests that the Exchange has undertaken such a massive project, her unadorned claim that the Exchange "does not have subscribers or members that are citizens of the State of Oklahoma" is more conclusory than conclusive.

Still, nothing offered by Mr. Sandhar contradicts Ms. Evans's testimony. His evidence consists of various statements posted to the website of the "CSAA Insurance Group" that tout support for "members" in Oklahoma after catastrophic tornadoes ravaged the state in 2013. (Doc. 21-17). While this might be evidence that the CSAA Insurance *Group* has members in Oklahoma, it is not evidence that CSAA Insurance *Exchange* has members in Oklahoma. "CSAA Insurance Group" is a brand name used by the Exchange *and* several of its subsidiaries, including CSAA Fire & Casualty and CSAA General. (Doc. 9; Doc. 26-2). Unlike the Exchange, both CSAA General and CSAA Fire & Casualty are licensed to write insurance policies in Oklahoma. Thus, it

---

[1] The Exchange's financial statements are available via the Company Profile search tool on the California Department of Insurance's website. To access the tool, visit http://www.insurance.ca.gov/01-consumers/120-company/ and select "Insurance Company Information."

is entirely possible for the "CSAA Insurance Group," which is not a legal identity, to have "members" in Oklahoma even as the Exchange itself does not.

Based on the current record, the Court finds that the Exchange is not a citizen of Oklahoma. Mr. Sandhar presents no evidence that any of the Exchange's subscribers are citizens of Oklahoma. Nor does he offer any evidence or legal theory suggesting that an insurance exchange takes on the citizenship of its subsidiaries' customers.[2] Therefore, Ms. Evans's testimony that none of the Exchange's subscribers are citizens of Oklahoma stands unrebutted. The defendant opposing remand bears a "heavy burden," but that burden is not so heavy as to require a defendant to conclusively disprove mere speculation, especially when doing so would be impracticable. Because the Exchange is not a citizen of Oklahoma, its presence in this case does not require remand.

Moreover, even if the Exchange were a citizen of Oklahoma, its presence would still not require remand because Mr. Sandhar does not have a viable cause of action against it.[3] A person or entity not party to a contract cannot be sued for breach. *Miller v. BCG Healthcare Investments LLC*, 2012 WL 12863169, at *1 (W.D. Okla. Sept. 11, 2012). And the general rule is that only an

---

[2]     According to Ms. Evans, a person does not become a subscriber of the Exchange merely by holding a policy written by one of its subsidiaries, which are separately organized legal entities. (*See* Doc. 26-2 ¶¶ 8–9).

[3]     Mr. Sandhar argues that the viability of his claims against the Exchange are not properly before the Court because the defendants' Notice of Removal did not specifically allege fraudulent joinder with respect to the Exchange. While it is true that the removing defendants did not expressly apply the term "fraudulent joinder" to the Exchange, they nevertheless clearly raised the issue in their Notice. (*See* Doc. 2 ¶ 9) ("[T]he Exchange was not involved in any of the investigation or handling of Plaintiff's claim giving rise to the present lawsuit. Even if, *arguendo*, the Exchange is to be treated as a citizen of Oklahoma, Plaintiff has still failed to state a valid claim against the Exchange."). Moreover, the defendants argue the issue extensively in their Response to Mr. Sandhar's remand motion. Had Mr. Sandhar cared to do so, he could have addressed their arguments on reply.

insurer owes a duty of good faith to the insured, although an exception exists when a stranger to the insurance contract "acts so like an insurer that it develops a special relationship with the insured." *Trinity Baptist Church v. Brotherhood. Mut. Ins. Servs., LLC*, 341 P.3d 75, 79 (Okla. 2014).

Here, the CSAA Defendants present ample evidence that CSAA Fire & Casualty, not the Exchange, was Mr. Sandhar's insurer. The Declarations page of his policy bears the name "AAA Fire & Casualty Insurance Company."[4] (Doc. 26-1). The check included with the offer of payment on his claim is from "CSAA Fire & Casualty Insurance Company," and the stub it was attached to indicate CSAA Fire & Casualty was the issuer on his policy. (Doc. 26-6). Pages of correspondence related to his claim, including letters Mr. Sandhar himself addressed to CSAA Fire & Casualty, support the same conclusion, as does the Oklahoma Insurance Department's handling of Mr Sandhar's complaint. (Docs. 26-4, 26-7). Moreover, nothing in the record indactes that the Exchange "acted like an insurer" with respect to Mr. Sandhar. Because the Exchange was not a party to the insurance contract, and because it did not take on the role of Mr. Sandhar's insurer, Mr. Sandhar has no viable cause of action against it for breach of contract or bad faith.

Mr. Sandhar argues that the Exchange may be liable under an alter-ego theory, but the mere fact that one company is wholly owned by a parent entity does not, of itself, mean that the parent may be held liable for the conduct of its subsidiary. *Key v. Liquid Energy Corp.*, 906 F.2d 500, 504 (10th Cir. 1990). Although ownership of the subsidiary is a factor, alter-ego liability is primarily a question of control. *Frazier v. Bryan Mem'l Hosp. Auth.*, 775 P.2d 281, 288 (Okla. 1989). And here, nothing in the record suggests that the Exchange has operational control over

---

[4]     CSAA Fire & Casualty brands itself as "AAA Insurance", (*see* Doc. 26-1), and it used to operate under the trade name "AAA Fire & Casualty Insurance Company," (*see* Doc. 27-1).

CSAA Fire & Casualty. On the contrary, the claims correspondence, corporate disclosure papers, financial statements, and policy declarations all point in the same direction: CSAA Insurance Exchange is legally distinct from CSAA Fire & Casualty Insurance Company. Because CSAA Fire & Casualty is not the mere "alter ego" of the Exchange, the Exchange is not vicariously liable for any breach of contract or bad faith claim arising out of Mr. Sandhar's policy. Consequently, even if the Exchange were a citizen of Oklahoma, the Court would disregard that citizenship because the Exchange has been fraudulently joined.[5]

### B.    Automobile Club of Oklahoma

The CSAA Defendants do not dispute that the Automobile Club is a citizen of Oklahoma. They argue only that Club, like the Exchange, cannot be liable to Mr. Sandhar for breach of contract or bad faith.[6] Having reviewed the evidence submitted by the parties, the Court agrees. All the reasoning applied above with respect to the Exchange apply with equal, if not greater, force to the Automobile Club.

The Club cannot be held liable directly, because it was not a party to Mr, Sandhar's insurance contract and had no role in the handling of his claim. (*See* Doc. 26-11). And, it cannot be held liable on an alter-ego theory because it is not owned or controlled by the Exchange or any of its subsidiaries. (*See id.*). According to an executive with the Club's successor organization, AAA Club Alliance, the Club's relationship with CSAA was purely contractual. The Club solicited

---

[5]    This result is consistent with the Court's decisions in two other cases involving the Exchange. *See Strome v. CSAA Ins. Exch.*, No. 19-CV-0573-CVE-FHM, 2020 WL 930493 (N.D. Okla. Feb. 26, 2020); *DeSmet v. CSAA Ins. Exch.*, No. 19-CV-0624-CVE-JFJ, 2019 WL 7284769 (N.D. Okla. Dec. 27, 2019).

[6]    During the period relevant to this lawsuit, the Automobile Club of Oklahoma was an Oklahoma nonprofit corporation. The Club has since been merged into AAA Club Alliance Inc., a Delaware corporation, according to an affidavit filed by the corporation's regional president. (Doc. 26-11).

customers for CSAA Fire & Casualty by offering "AAA" branded policies, underwritten by CSAA Fire & Casualty, to Club members at a discount. (*See id.*). Under such an arrangement, Mr. Sandhar has no cause of action against the Club. Consequently, the Court finds that the Club's joinder in this case was fraudulent and its citizenship may be disregarded for the purposes of exercising diversity jurisdiction under 28 U.S.C. § 1332.

## III.   Conclusion

For the reasons explained above, the Court finds that jurisdiction is proper under 28 U.S.C. § 1332. Plaintiff's Motion to Remand (Doc. 21) is therefore **denied.** Because Mr. Sandhar has no viable cause of action against Defendants CSAA Insurance Exchange and Automobile Club of Oklahoma, they are dismissed from this case, and the Court Clerk is directed to terminate them as parties in this matter.

SO ORDERED this 28th day of July, 2020.

_____

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT