IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ALBERT SANDHAR,

    Plaintiff,

v.

CSAA FIRE AND CASUALTY
INSURANCE COMPANY d/b/a AAA
FIRE & INSURANCE COMPANY,

    Defendant.

Case No. 19-cv-306-JFH-CDL

## OPINION AND ORDER

Before the Court is a joint motion to set the case for trial ("Motion") filed by Plaintiff Albert Sandhar ("Plaintiff") and Defendant CSAA General Insurance Company ("Defendant") (collectively "the parties"). Dkt. No. 94. For the reasons set forth below, the Motion is DENIED.

This case involves an insurance coverage dispute arising from a claim Plaintiff filed after his home was damaged during a windstorm in 2017. Dkt. No. 2-2. Plaintiff filed suit in the Tulsa County District Court on April 22, 2019, and the case was removed to this Court on June 7, 2019. Dkt. No. 2-2. On September 22, 2020, the Court entered a scheduling order setting the case for trial on August 16, 2021. Dkt. No. 36. On November 20, 2020, Plaintiff filed an unopposed motion to modify the scheduling order. Dkt. No. 42. The trial was reset for October 18, 2021. Dkt. No. 43. On February 3, 2021, the parties filed a joint motion to modify the scheduling order. Dkt. No. 45. The trial was reset for January 19, 2022. Dkt. No. 50. On April 2, 2021, the parties filed a second joint motion to modify the scheduling order. Dkt. No. 56. The trial was reset for April 18, 2022. Dkt. No. 63.

On March 1, 2022, the Court entered a minute order striking all remaining scheduling order deadlines, including the trial [Dkt. No. 91], pursuant to General Order 22-04, which provides:

>The Court has a significant number of criminal cases awaiting trial due to the COVID-19 pandemic and the decision of the Supreme Court in *McGirt v. Oklahoma*, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020). Criminal cases must be tried before civil cases. Absent extraordinary circumstances, civil cases will not be tried before a district judge in the foreseeable future. The Court will address pending motions in civil cases as its schedule permits; however, the Court's ability to do so will be subject to the demands of its criminal docket. Pursuant to Fed. R. Civ. P. 73, the parties in a civil case may consent to a proceeding before a magistrate judge, including for dispositive motions and/or a jury or nonjury trial. The AO-85 consent forms are available on the U.S. District Court website. The parties are advised that they are free to withhold consent to proceed before a magistrate judge without any adverse consequences; the parties are reminded of this option only as a possible means of expediting the final resolution of their civil case. The parties are also advised that they may request an additional settlement conference at any time.

On August 22, 2022, the parties filed the instant Motion, requesting that the Court set a trial date. Dkt. No. 94. In support of this request, the parties note that: (1) approximately five months have elapsed since the Court vacated the April 18, 2022 trial; and (2) under Local Rule of Civil Procedure 40-2 a case may be set on the Court's trial calendar "upon motion by the parties." LCvR40-2; Dkt. No. 94 at 2.[1]

The Court does not take issue with the parties' request.[2] The Court recognizes that, under ordinary circumstances, a request for a trial setting in a civil case that has been pending as long as this case would be reasonable. However, as set forth in General Order 22-4, the circumstances the Court currently faces are anything but ordinary.

This Court has experienced unprecedented caseloads and jurisdictional complexities since the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020), which held that

---

[1] When the Motion was filed, this case assigned to the Honorable John E. Dowdell. However, due to Judge Dowdell taking Senior status, this case, among others, was reassigned to the undersigned on October 7, 2022.

[2] The Court does note, however, that of the 13 months that have passed since the initial trial setting, 8 months of that delay resulted from the parties' repeated requests to modify the scheduling order. Dkt. No. 42; Dkt. No. 45; Dkt. No. 56.

while Congress had diminished the Creek reservation in Eastern Oklahoma, it had never formally disestablished it. This imposed federal "jurisdiction over the apprehension and prosecution of major crimes by or against Indians in a vastly expanded Indian Country." *State ex rel. Matloff v. Wallace*, 497 P.3d 686, 692 (Okla. Crim. App. 2021). *McGirt*'s holding was later extended to other reservations as well.

As Chief Justice Roberts recognized in his *McGirt* dissent, "the share of serious crimes committed by 10%–15% of the 1.8 million people in eastern Oklahoma, or of the 400,000 people in Tulsa, is no small number." 140 S.Ct. at 2501. The practical effect of *McGirt* was a one-year increase of nearly 200% in the number of criminal cases filed in the Northern District of Oklahoma and more than 400% in the Eastern District of Oklahoma. *See* U.S. Courts, *Judiciary Supplements Judgeship Request, Prioritizes Courthouse Projects* (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects. Indeed, the Supreme Court has since recognized the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt. Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486, 2492 (2022). And numerous federal courts have "noted *McGirt*'s tremendous impact." *United States v. Budder*, --- F. Supp. 3d ---, 2022 WL 1948762, at *7 (E.D. Okla. Apr. 29, 2022) (collecting cases).

The dramatic increase in criminal caseloads because of *McGirt* has resulted in strained judicial resources across numerous areas, two of which are particularly relevant here. First, the Northern District of Oklahoma is allocated three and a half full-time district judges but, due to unfortunate and unforeseeable circumstances, has been operating with only two and a half judges in the tsunami of *McGirt*. Further, as of October 1, 2022, the Northern District is now down to only one and a half active district judges, of which the undersigned is the half-time judge due to

his multi-district caseload—a caseload which includes the Eastern District of Oklahoma, which has had a proportionally even larger onslaught of criminal cases since July 2020.[3]

"District courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2054 (2017) (alteration omitted) (internal quotation marks and citation omitted). And this Court, facing all its present challenges, has endeavored to do just that. Nonetheless, it has been forced to place a moratorium on the trial of civil cases, except under extraordinary circumstances. *See* General Orders 22-05, 22-07, 22-10, 22-11, 22-13.[4] In requesting that a trial be set in this case, the parties do not acknowledge the current challenges facing the Court. Nor do they set forth extraordinary circumstances that would bring the case under an exception to the current moratorium on the trial of civil cases.[5]

IT IS THEREFORE ORDERED that the joint motion to set the case for trial [Dkt. No 94] is DENIED.

Dated this 13th day of October.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[3] The parties are likely aware of the Court's inability to replace district judges. By constitutional design, that authority lies within the other branches of government. *See* U.S. Constitution, Article II, § 2 (providing that the President shall nominate, and by and with the advice and consent of the Senate, shall appoint judges of the court to serve pursuant to Article III of the Constitution).

[4] The Court would like the parties to understand that it views this case as important, including the effort to set a trial as soon as possible. Indeed, there are numerous civil cases awaiting trial settings, many of which have been pending longer than this case. This is not a situation with which the Court is satisfied. However, it is truly making every effort to diligently address every case and give every case the attention deserved.

[5] As soon as it is practical, the Court will begin to add civil cases to its trial dockets, but, even then, civil cases will trail criminal cases.