IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ALBERT SANDHAR,

        **Plaintiff,**

v.                                      Case No. 19-cv-00306-JFH-CDL

**CSAA FIRE AND CASUALTY
INSURANCE COMPANY,**

        **Defendant.**

## OPINION AND ORDER

Currently before the Court are ten Motions in Limine filed by Defendant CSAA Fire and Casualty Insurance Company ("CSAA"). Dkt. No. 69. Plaintiff Albert Sandhar ("Mr. Sandhar") has filed a Response opposing six of CSAA's requests to exclude evidence [Dkt. No. 70][1] and CSAA has filed a Reply [Dkt. No. 72]. Having reviewed the Parties' briefs and the authority cited therein, the Court holds that CSAA's motions are GRANTED IN PART and DENIED IN PART as set forth below.

1. **Background**

In 2017, a storm allegedly caused damage to Mr. Sandhar's residence. Dkt. No. 2-2 at ¶ 13. Mr. Sandhar submitted a claim to his insurer, CSAA, and CSAA responded by providing Mr. Sandhar with compensation in the amount of $3,869.09. *Id.* at ¶¶ 14-16. A dispute arose between the parties concerning CSAA's valuation of Mr. Sandhar's damages, *id.* at ¶ 17, which gave rise

---

[1] Mr. Sandhar does not object to CSAA's request to exclude evidence or argument concerning the following: Oklahoma's Unfair Claims Settlement Practices Act (Motion in Limine No. 1); whether CSAA owed its insured the "benefit of the doubt" (Motion in Limine No. 6); or litigation-induced stress (Motion in Limine No. 9). Mr. Sandhar further agrees that there should be no argument concerning or reference to punitive damages during the first stage of the trial (Motion in Limine No. 8). These unopposed motions are GRANTED by agreement.

to this action. Although Mr. Sandhar originally asserted both a breach-of-contract claim and a bad-faith claim against CSAA, *id.* at ¶¶ 12-33, the breach-of-contract claim has now been dismissed. Dkt. No. 44; Dkt. No. 46. The only question that will be presented to the jury is whether CSAA acted in bad faith in the evaluation of Mr. Sandhar's claim.

## 2. Analysis

A motion in limine is a pretrial request to exclude the introduction of certain evidence at trial. *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (quoting *United States v. Luce*, 834 F.3d 1236, 1239 (6th Cir. 1983)). These motions, which may be granted or denied at the trial court's discretion, allow the parties to resolve their evidentiary disputes without disrupting trial proceedings with lengthy arguments. *Mendelsohn v. Sprint/United Management Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008); *see also Jones*, 59 F.3d at 146 (recognizing that the guidance provided in response to a motion in limine is given at the court's discretion). Care should be used before granting a motion in limine, however. Evidence should not be excluded unless the moving party has shown that it will not be admissible on for any purpose,[2] and a trial court should be mindful that some evidentiary challenges are best addressed during trial, when "questions of foundation, relevancy and potential prejudice may be resolved in the proper context." *Mendelsohn*, 587 F. Supp. 2d at 1208 (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)).

With this guidance in mind, the Court turns to the six disputed motions in limine presented by CSAA. The Parties are advised that the following rulings on CSAA's motions are preliminary.

---

[2] *Tulsa Zoo Management, Inc. v. Peckham Guyton Albers & Viets, Inc.*, No. 17-CV-644, 2019 WL 1562147, at *1 (N.D. Okla. Mar. 5, 2019) (quoting *Cook v. Peters*, No. 13-CV-107-GKF-FHM, 2015 WL 10986407, at *1 (N.D. Okla. July 30, 2015)).

### A. Motion in Limine No. 2: "Golden Rule" Arguments

In its second Motion in Limine, CSAA asks the Court to prevent Mr. Sandhar from asking the jurors to "put themselves into the shoes of the [Plaintiff] and do unto [him] as they would have [him] do unto them in similar circumstances." Dkt. No. 69 at 1 (citation omitted). According to CSAA, arguments that invite the jury to put themselves in the plaintiff's place or consider the harm being done to the public are *per se* improper because they encourage the jury to "depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Id.* (quoting *Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576, 1580 (10th Cir. 1984)). In response, Mr. Sandhar acknowledges that "golden rule" arguments *may* be improper in certain circumstances, but claims such arguments may be permitted where, for example, "the reasonableness of conduct, in light of information known at the time, is at issue." Dkt. No. 70 at 4 (quoting *Smith v. CSAA Fire & Cas. Co.*, No. CIV-17-1302-D, 2020 WL 4340546, at *1 (W.D. Okla. July 28, 2020)).

It is widely recognized "golden rule" arguments are improper in some cases, but permissible in others. Such arguments should never be made when asking a jury to consider the appropriate amount of damages. *See Shultz v. Rice*, 809 F.2d 643, 651–52 (10th Cir. 1986) (collecting cases) (concluding that the cases cited by the plaintiff stood for the general proposition that a jury may not be instructed to "place itself in a party's shoes *with respect to damages*"); *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983) (recognizing that golden rule arguments are "improper in relation to damages"). But several courts have permitted "golden rule"-type arguments when the question of liability turns on the reasonableness of a party's conduct. For example, in *Shultz*, the jury was asked to consider whether a physician acted reasonably when he provided a particular medication to the plaintiff, who was pregnant. *Shultz*, 809 F.2d at 652. The

3

plaintiff objected to the physician's argument that the jury should "consider the reasonableness of [the physician's] actions in light of the information he possessed at the time of the injection but before the return of the pregnancy test results." *Id.* The Tenth Circuit concluded the district court did not err in permitting the challenged argument, which was "directed solely to the reasonableness" of the physician's conduct and could "hardly be characterized as an emotional appeal" that would compromise the jury's neutrality. *Id.*

The Western District of Oklahoma has likewise recognized that "golden-rule"-style arguments are allowed to the extent they invite the jury to consider "the reasonableness of [a party's] conduct, in light of information known at the time." *Smith*, 2020 WL 4340546, at *2. This Court agrees that arguments asking a jury to consider a party's conduct in view of what it knew is not the type of "emotional appeal" that would invite the jury to make a biased decision based on emotion, rather than the evidence presented. *See Shultz*, 809 F.2d at 652; *Stokes*, 710 F.2d at 1128 (recognizing that the prohibition against "golden rule" arguments is designed to reduce the risk of a jury deciding the case on emotion, rather than evidence, and concluding that a party's use of "golden rule" arguments was reasonable where the arguments "requested the jury to put themselves in Stokes' place to determine whether his fears and resultant failure to request help were reasonable"). Accordingly, CSAA's Motion in Limine No. 2 is GRANTED insofar as it concerns golden-rule arguments pertaining to damages. The motion is DENIED without prejudice insofar as it concerns arguments pertaining to whether a party's conduct was reasonable in view of the facts known to the party. The Court will be better equipped to determine whether such arguments are permissible invitations to consider the reasonableness of a party's conduct, as opposed to impermissible appeals to emotion, in the context of trial.

### B. Motion in Limine No. 3: Appeals to Fairness or Reasonableness

CSAA next asks the Court to prohibit Mr. Sandhar from introducing testimony purporting to define Oklahoma's bad-faith standard, including testimony using phrases such as "unfair" or "unreasonable" to describe CSAA's conduct. Dkt. No. 69 at 4. According to CSAA, such testimony would confuse the jury and create a scenario where the witnesses—rather than the Court—instruct the jury on the law governing bad-faith claims. *Id.* at 4-6. Mr. Sandhar, in response, argues that the ruling requested by CSAA would hamstring his case, as it would be impossible to try a bad-faith case without referencing the governing standard of law. Dkt. No. 70 at 5.

This Court considered a similar dispute in *Fees v. American Family Life Insurance Co. of Columbus*, No. 19-CV-0476-CVE-JFJ, 2021 WL 2104990, at *6 (N.D. Okla. May 25, 2021).[3] In that case, the defendant requested that the plaintiff and her witnesses be prohibited from describing the defendant's conduct as unfair or unreasonable. *Id.* The plaintiff responded that her case would be prejudiced if she could not "present evidence and argument related to both the reasonableness

---

[3] The Court notes with concern that Mr. Sandhar described *Fees* as a case in which this Court "den[ied] [the defendant's] motion *in limine* seeking to exclude evidence of what is fair and reasonable based, in part, on the prejudice that would then result to Plaintiff in a bad faith insurance dispute." Dkt. No. 70 at 6 (citing *Fees*, 2021 WL 2104990, at *6) (emphasis in original). In *Fees*, this Court held that the motion "should be granted" as to characterizations that "would be prejudicial and invade the province of the jury," while permitting the plaintiff to "argue that the evidence will or has shown that the defendant acted 'unfairly' or 'unreasonably' toward plaintiff." *Fees*, 2021 WL 2014990, at *6. This is not the only instance in which Mr. Sandhar's characterizations of a court's holding were incomplete. *Compare Godfrey v. CSAA Fire & Cas. Ins. Co.*, No. CIV-19-00329-JD, 2020 WL 1056306, at *6 (W.D. Okla. Mar. 4, 2020) (stating that "given the lack of specificity in the motion," the court was "unable to make any meaningful ruling on" the issue of whether questions to witnesses concerning fairness would benefit the jury, and concluding that "any ruling would be premature"), *with* Dkt. No. 70 at 6 (suggesting that the *Godfrey* Court "den[ied] [the] motion . . . to exclude evidence or argument as to what is fair or reasonable"). The Court cautions the Parties to use care to when describing the holdings of cited authorities.

and fairness" of the defendant's conduct. *Id.* (internal quotation marks and citation omitted). The Court concluded the parties' positions were "not at odds" and granted the motion insofar as it was directed toward characterizations of the defendant's conduct, but denied the motion insofar as it sought to prevent the plaintiff from referring to the governing standard or arguing what the evidence would or did show. *Id.*

This Court's holding in *Fees* strikes the proper balance, and its reasoning is instructive here. CSAA, like the defendant in *Fees*, is concerned that the jury will be misled if witnesses are permitted to characterize CSAA's as unfair or unreasonable, while Mr. Sandhar is concerned that his case will be harmed if his counsel cannot use "fair" and "reasonable" when referencing the governing standard. Dkt. No. 69 at 2-5; Dkt. No. 70 at 5-6. These concerns are not at odds. CSAA's Motion in Limine No. 3 is GRANTED insofar as CSAA seeks to preclude Mr. Sandhar from introducing testimony that characterizes CSAA's conduct as unfair or unreasonable. The motion is DENIED insofar as it seeks to preclude Mr. Sandhar from discussing or referencing the applicable law when arguing his case to the jury.

## C. Motion in Limine No. 4: Evidence of Reserves

In its Motion in Limine No. 4, CSAA asks this Court to prevent Mr. Sandhar from introducing evidence concerning the reserve set by CSAA on Plaintiff's claim. Dkt. No. 69 at 5-10. CSAA notes that insurers are required to establish reserves under state regulatory authority, and that these reserves reflect a variety of factors, none of which are directly tied to a claim's value. *Id.* at 6. Mr. Sandhar argues that reserve information may be "highly relevant" to a bad-faith assessment, and that any prejudice arising from the admission of such evidence could be cured by an appropriate jury instruction. Dkt. No. 70 at 6-9.

Several courts within the Tenth Circuit have acknowledged the relevance of loss reserves, while reaching different conclusions as to whether such evidence is unduly prejudicial. For example, the Western District of Oklahoma has acknowledged the relevance of—and risk of prejudice associated with—loss reserve evidence, but has determined that any risk of prejudice associated with such evidence could be alleviated by means of a limiting instruction. *See Smith v. CSAA Fire & Cas. Ins. Co.*, No. CIV-17-1302-D, 2020 WL 4340546, at *4 (W.D. Okla. July 28, 2020) (stating that "any prejudice . . . can be avoided by using an appropriate jury instruction"); *Charles A. Shadid, L.L.C. v. Aspen Specialty Ins. Co.*, No. CIV-15-595-D, 2018 WL 3420816, at *5 (W.D. Okla. July 13, 2018) (sharing in the "concern that the jury may not understand the limited purpose for which the evidence is admitted," but concluding this prejudice could be "avoided by the use of an appropriate jury instruction"). The District Courts for Colorado and Kansas have agreed that such evidence is generally relevant, but excluded the evidence on the grounds that the probative value is substantially outweighed by the risk of prejudice. *See Peden v. State Farm Mut. Auto. Ins. Co.*, No. 14-CV-00982-LTB-KLM, 2018 WL 3496735, at *8 (D. Colo. July 20, 2018) (concluding evidence of the insurer's reserves "may have some probative value in assessing the adequacy of its investigation and valuation of Plaintiff's UIM claim" before holding that the relevance of such evidence was outweighed by the risk of prejudice); *Boardwalk Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co.*, No. 11-2714-JAR, 2014 WL 2690150, at *3 (D. Kan. June 13, 2014), *rev'd and vacated on other grounds,* 816 F.3d 1284 (10th Cir. 2016) (excluding evidence of reserve under Federal Rule of Evidence 403).

Assuming this Court were to find—as other courts have[4]—that loss reserve evidence tends to make a fact in dispute more or less probable under Federal Rule of Evidence 401,[5] the Court would still be left with the question of whether the probative value of such evidence is outweighed by its prejudicial effect under Federal Rule of Evidence 403. When conducting a Rule 403 analysis, the Court must assign the evidence its "maximum reasonable probative force and its minimum reasonable prejudicial value." *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1139 (10th Cir. 2006) (quoting *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000)). Such an analysis cannot be performed in the abstract. *See ROC ASAP, L.L.C. v. Starnet Ins. Co.*, No. CIV-12-461-D, 2014 WL 4631121, at *3 (W.D. Okla. Sept. 15, 2014) (deferring ruling on the admissibility of loss reserve recommendations and instructing the parties to approach the bench prior to introducing such evidence).

Where, as here, the parties have not provided any specific details concerning the evidence being challenged, the Court cannot perform the analysis required under Rule 403, nor can it determine whether the prejudice of a potentially wide swath of evidence could be ameliorated by a limiting instruction. Accordingly, CSAA's Motion in Limine No. 4 is DENIED without prejudice as to the Parties' ability to challenge specific evidence identified in final witness and exhibit lists. The Parties are directed to address the admissibility of such evidence in their trial briefs.

---

[4] *E.g., Peden*, 2018 WL 3496735, at *8; *Shadid*, 2018 WL 3420816, at *5.

[5] As this Court has previously noted [Dkt. No. 97], evidence need only have a "tendency to make the existence of any fact that is of consequence . . . more or less probable" to be relevant. *See* Federal Rule of Evidence 401.

**D. Motion in Limine No. 5: Arguments that CSAA Must "Look Harder" for Reasons to Pay a Claim**

CSAA's Motion in Limine No. 5 seeks to exclude any suggestion or argument that CSAA should have looked for reasons to allow—or pay more on—Mr. Sandhar's claim. Dkt. No. 69 at 11. Mr. Sandhar concedes that he has no plans to "ask[ ] questions or elicit[ ] testimony about whether Defendant should look 'harder' for reasons to pay/pay more on a claim." Dkt. No. 70 at 9. Nevertheless, Mr. Sandhar asks the Court to defer ruling on this issue, as evidence concerning CSAA's investigation of Mr. Sandhar's claim, as well as CSAA's training and claims handling practices, might fall within the scope of this request. *Id.* at 9-10.

The Court understands Mr. Sandhar's concern. But Motion in Limine No. 5 is not so broad as to exclude relevant evidence concerning CSAA's conduct, practices, and analysis. Nor does it seek to exclude arguments that explain CSAA's obligations. Given the Parties' apparent agreement on the limited category of evidence at issue in Motion in Limine No. 5, the Motion is GRANTED. *E.g., Fees*, 2021 WL 2104990, at *5.

**E. Motion in Limine No. 7: Other Claims or Lawsuits**

In its Motion in Limine No. 7, CSAA asks the Court to exclude evidence of other claims or lawsuits against CSAA. In support of this request, CSAA argues that such evidence is *per se* irrelevant, unfairly prejudicial, confusing, or otherwise inadmissible. *See* Dkt. No. 69 at 14-22. In its Motion, CSAA recognizes that a court must generally consider the specific facts of the other claims or lawsuits when ruling on their admissibility at trial. *See id.* at 15, 17-18. Nevertheless, CSAA does not identify the specific evidence that it seeks to exclude. *Id.* at 15 (asserting that Mr. Sandhar "may attempt to introduce evidence of other bad faith cases"). Having reviewed the briefing by the Parties, the Court concludes that it lacks sufficient information to rule on whether the challenged evidence is irrelevant, constitutes improper hearsay, or is otherwise inadmissible.

Accordingly, Motion in Limine No. 7 is DENIED without prejudice as to the Parties' ability to challenge specific evidence identified in final witness and exhibit lists. The Parties are directed to address the admissibility of such evidence in their trial briefs.

### F. Motion in Limine No. 10: CSAA's Claims Handling Guidelines

CSAA's Motion in Limine No. 10 seeks the exclusion of "any reference to CSAA claim handling guidelines." Dkt. No. 69 at 23. CSAA notes that its internal guidelines "do not constitute standards of care," and that evidence CSAA violated its internal guidelines does not have any tendency to establish whether it committed a tort. *Id.* at 23-34 (citing *Johnson v. Liberty Mut. Ins. Co.*, 648 F.3d 1162, 1166 (10th Cir. 2011), and *Peters v. Am. Income Life Ins. Co.*, 2003 OK CIV APP 62 ¶ 38, 77 P.3d 1090)). Mr. Sandhar argues, in response, that the authority cited by CSAA does not mandate the exclusion of claims handling guidelines in all cases, and that the specific evidence should be considered in the context of this case. *See* Dkt. No. 70 at 21-22 (citing *Hellard v. Mid. Century Ins. Co.*, 519 F. Supp. 3d 1025, 1028 (N.D. Okla. 2021)).

This Court has previously declined the invitation to categorically ban all evidence of an insurer's internal guidelines. *See Hellard*, 519 F. Supp. 3d at 1029 (declining to "wholly exclude evidence of [the insurer's] internal policies and procedures, claim guidelines, and adjuster training manuals" where no specific evidence was identified); *Fees*, 2021 WL 2104990, at *5 (stating that, "at this juncture, the Court is not inclined to categorically bar the admission of defendant's claim handling manual at trial"). Other courts have recognized that evidence of internal protocols may be relevant to bad-faith claims in certain contexts. *E.g., Shotts v. GEICO Gen. Ins. Co.*, No. CIV-16-1266-SLP, 2018 WL 4832625, at *4 (W.D. Okla. July 12, 2018) (agreeing that "a claims-handling manual may have relevance to whether the insurer acted in bad faith when handling a particular claim"). This Court would be better able to evaluate the relevance of such evidence—

as well as its prejudicial effect—if the evidence were identified specifically, rather than in the abstract.  Accordingly, Motion in Limine No. 10 is DENIED without prejudice as to the Parties' ability to challenge specific evidence identified in final witness and exhibit lists.  The Parties are directed to address the admissibility of such evidence in their trial briefs.

3. **Conclusion**

In summary the Court holds that CSAA's Motions in Limine are resolved as follows:

1. CSAA's Motion in Limine No. 1 is GRANTED by agreement;
2. CSAA's Motion in Limine No. 2 is GRANTED in part and DENIED in part;
3. CSAA's Motion in Limine No. 3 is GRANTED in part and DENIED in part;
4. CSAA's Motion in Limine No. 4 is DENIED without prejudice;
5. CSAA's Motion in Limine No. 5 is GRANTED by agreement;
6. CSAA's Motion in Limine No. 6 is GRANTED by agreement;
7. CSAA's Motion in Limine No. 7 is DENIED without prejudice;
8. CSAA's Motion in Limine No. 8 is GRANTED by agreement;
9. CSAA's Motion in Limine No. 9 is GRANTED by agreement; and
10. CSAA's Motion in Limine No. 10 is DENIED without prejudice.

IT IS THEREFORE ORDERED that CSAA's Motions in Limine Nos. 1 through 10 [Dkt. No. 69] are GRANTED in part and DENIED in part as set forth specifically herein.

DATED this 27th day of March 2023.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE